101 F.3d 684
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Rick BLAKE, Petitioner-Appellant,
v.
Christopher ARTUZ, Superintendent, Green Haven Correctional
Facility, Respondent-Appellee.
 No. 95-2423.
 United States Court of Appeals, Second Circuit.
 May 22, 1996.
 
 APPEARING FOR APPELLANT: Robert E. Nicholson, New York, NY.
 APPEARING FOR APPELLEE: Noreen Healey, Assistant District Attorney for Nassau County, Mineola, NY.
 E.D.N.Y.
 AFFIRMED.
 Before LUMBARD, MESKILL and MINER, Circuit Judges.
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York, it is hereby
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 This cause came to be heard on the transcript of record and was argued by counsel.
 Petitioner-appellant Rick Blake ("Blake") appeals from a judgment entered in the United States District Court for the Eastern District of New York (Seybert, J.) dismissing his fifth petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 as an abuse of the writ.
 
 
 1
 On August 3, 1982, police discovered the body of Blake's wife ("Mrs.Blake") in a parking garage in Nassau County, New York. The body was wrapped in a mattress pad, and a telephone cord was tied around the midsection of the body. The medical examiner observed that Mrs. Blake had no teeth or dentures, that there was no urine in her bladder, and that there was a bruise on her leg that had been inflicted five to twenty minutes before her death. The medical examiner also believed that Mrs. Blake had been strangled to death at approximately 11:00 p.m. on August 1, 1982.
 
 
 2
 On August 3, 1982, the police went to the Blakes' home to question Blake about his wife's death. Blake told the police that he and his wife went to sleep together at approximately 11:00 p.m. on August 1st, and that when he woke up the next morning his wife was gone. Blake showed the police the bedroom and admitted that the sheets that were on the bed were not the sheets that he and his wife had slept on during the night of August 1st. He explained that he had taken those sheets to Lee's Laundry Service and gave the police permission to retrieve the sheets. The police obtained the sheets and discovered that one of the sheets had been stained with the urine of a person with type O blood.
 
 
 3
 In April of 1983, while awaiting his trial, Blake allegedly told Michael Nigro, a fellow prisoner in the Nassau County Jail, that he had killed his wife. He told Nigro that he and his wife had an argument in their home, that he had kicked her in the leg, and that he had punched her in the face, knocking her dentures out of her mouth. He admitted that he had strangled Mrs. Blake until she urinated in the bed. Nigro testified as to these statements at Blake's trial. Blake testified that he and Mrs. Blake went to sleep together at approximately 11:00 p.m. on August 1, 1982, that he woke up at approximately 1:00 a.m. and saw Mrs. Blake in the kitchen, and that when he woke up at 7:00 a.m. Mrs. Blake was gone.
 
 
 4
 On March 23, 1984, Blake was convicted of murder in the second degree and was sentenced to a term of imprisonment of 20 years to life. Blake appealed, and the Appellate Division, Second Department, affirmed his conviction. People v. Blake, 511 N.Y.S.2d 401 (2d Dep't 1987). Leave to appeal to the New York Court of Appeals was denied on May 20, 1987, People v. Blake, 69 N.Y.2d 1001 (1987), and again, upon reconsideration, People v. Blake, 70 N.Y.2d 643 (1987). Blake also filed several motions in state court, including a petition for a writ of error coram nobis, a petition pursuant to Article 78 of N.Y. Civ. Prac. L. & R., and ten separate motions to vacate his conviction pursuant to N.Y.Crim. Proc. Law § 140.10. In an Order dated May 30, 1990, the Second Department prohibited Blake from attacking his conviction on any ground raised in a prior motion.
 
 
 5
 Blake also repeatedly has attacked his conviction in federal court. In 1982, and again in January of 1988, Blake filed petitions for writs of habeas corpus, pursuant to 28 U.S.C. § 2254, in district court. Both petitions were dismissed. In 1985, Blake commenced an action, pursuant to 42 U.S.C. § 1983, against the Nassau County District Attorney. In January of 1989, Blake filed his third § 2254 petition. The district court denied the petition, and, by Order dated September 27, 1990, enjoined Blake from commencing any actions against the respondents named in his previous petitions without first obtaining permission from the district court. After being transferred to the Green Haven Correctional Facility, Blake filed his fourth § 2254 petition, naming Superintendent Charles Scully as the respondent. The district court dismissed the petition in accordance with the prior order of the district court.
 
 
 6
 Finally, in January of 1994, Blake filed his fifth § 2254 petition, naming Christopher Artuz, the new Superintendent of Green Haven Correctional Facility, as respondent. In the petition, Blake raised five claims, four of which had not been raised in prior § 2254 petitions. The district court found that, "[i]n view of the petitioner's extended writ history in the federal courts, and moreover, his failure to establish cause and prejudice for not bringing any of his present claims in a prior federal habeas petition, the Court regards the abuse-of-the-writ doctrine properly to apply." The district court also found that Blake "fails to present even a colorable claim of factual innocence" and that the evidence against him at trial was "overwhelming." Accordingly, the district court concluded that Blake abused the writ and dismissed his petition. This appeal followed.
 
 
 7
 Under the abuse-of-the-writ doctrine, a § 2254 petitioner generally is barred from asserting claims that were not raised in a prior § 2254 petition. See McCleskey v. Zant, 499 U.S. 467, 493 (1991). However, a habeas petitioner's failure to raise a claim in a prior petition may be excused if he can demonstrate either cause and prejudice or that a fundamental miscarriage of justice would result from the court's failure to entertain his claims. Id. at 494-95. A fundamental miscarriage of justice occurs when a constitutional violation probably has caused an innocent person to be convicted of the crime. Id. at 494.
 
 
 8
 Blake claims that the district court should not have applied the abuse-of-the-writ doctrine because "he is factually innocent of the crime for which he was convicted." We reject this claim.
 
 
 9
 We believe that Blake has failed to present a credible claim of actual innocence. First of all, he has presented no new evidence with his § 2254 petition. Moreover, the evidence presented at trial was more than sufficient for a reasonable jury to find that Blake murdered his wife. At trial, Nigro testified that Blake confessed in detail that he had murdered his wife, and this confession was corroborated by the medical examiner's report. In addition, the government presented evidence that the fibers that had been removed from the phone cord tied around the victim's body were consistent with the fibers in the carpet in Blake's bedroom, and that the sheet that Blake had sent to Lee's Laundry was stained with urine from a person of the same blood type as Mrs. Blake. Furthermore, Blake's testimony was contradicted by prior statements that he had made to the police, and his behavior following the murder indicated that he was guilty of the crime. For example, Blake faked his own death by leaving a suicide note on the George Washington Bridge, and, when arrested, told the police, "Thank God it's over." Accordingly, the district court properly denied Blake's petition as an abuse of the writ.